**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

In re:                                          )
                                                )
CEC DEVELOPMENT BORROWER, LLC,   )   Case No. 20-14573 MER
                                                )   Chapter 11
                Debtor.                         )
_____    )
                                                )
In re:                                          )
                                                )
CEC RENEWABLE ASSETS, LLC,        )   Case No. 20-14574 JGR
                                                )   Chapter 11
                Debtor.                         )
_____    )
                                                )
In re:                                          )
                                                )
CEC RENEWABLE ASSETS              )   Case No. 20-14575 TBM
DEVELOPMENT, LLC,                    )   Chapter 11
                                                )
                Debtor.                         )
                                                )

---

**DISCLOSURE STATEMENT FOR DEBTORS' JOINT PREPACKAGED PLAN OF**
**LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, CO 80120
(303) 296-1999

Dated: July 2, 2020

THIS IS A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126, 11 U.S.C. §§ 1125, 1126. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THE DEBTORS INTEND TO SUBMIT THIS DISCLOSURE STATEMENT TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTORS' FILING FOR RELIEF UNDER CHAPTER 11 OF THE BANKRUPTCY CODE. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE AND SUBJECT TO THE PLAN SUPPORT AGREEMENT. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.

IMPORTANT INFORMATION REGARDING THIS DISCLOSURE STATEMENT FOR SOLICITATION OF VOTES ON THE JOINT PREPACKAGED CHAPTER 11 PLAN OF LIQUIDATION OF CEC DEVELOPMENT BORROWER, LLC, CEC RENEWABLE ASSETS, LLC, AND CEC RENEWABLE ASSETS DEVELOPMENT, LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE FROM:

| VOTING CLASS | NAME OF CLASS UNDER PLAN |
|---|---|
| CLASS 3 | SENIOR LENDERS |

IF YOU ARE IN CLASS 3, YOU ARE RECEIVING THIS DOCUMENT AND THE ACCOMPANYING MATERIALS BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN

DELIVERY OF BALLOTS

BALLOTS MUST BE <u>ACTUALLY RECEIVED</u> BY DEBTORS' COUNSEL BY THE VOTING DEADLINE, WHICH IS 1:00 P.M. (PREVAILING MOUNTAIN TIME) ON JULY 2, 2020 VIA THE ENCLOSED PRE-PAID, PRE-ADDRESSED RETURN ENVELOPE

OR

AT THE FOLLOWING ADDRESS:

<u>VIA FIRST-CLASS MAIL, E-MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:</u>

DAVID V. WADSWORTH, ESQ.
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 WEST MAIN STREET, SUITE 200
LITTLETON, CO 80120
dwadsworth@wgwc-law.com

PLEASE CHOOSE ONLY ONE METHOD TO RETURN YOUR BALLOT

This disclosure statement (as may be amended, supplemented, or otherwise modified from time to time, this "Disclosure Statement") provides information regarding the *Joint Prepackaged Plan of Liquidation of CEC Development Borrower, LLC, CEC Renewable Assets, LLC, and CEC Renewable Assets Development, LLC Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan")[1] which the Debtors are seeking to have confirmed by the Bankruptcy Court. A copy of the Plan is attached hereto as Exhibit A. The Debtors are providing the information in this Disclosure Statement to certain Holders of Claims for purposes of soliciting votes to accept or reject the Plan.

Pursuant to the Plan Support Agreement, the Plan is currently supported by the Debtors and its major stakeholders.

The consummation and effectiveness of the Plan are subject to certain material conditions precedent set forth in Article X of the Plan. There is no assurance that the Bankruptcy Court will confirm the Plan or that, if the Bankruptcy Court does confirm the Plan, the conditions necessary for the Plan to become effective will be satisfied or, in the alternative, waived.

You are encouraged to read this Disclosure Statement and the Plan in their entirety before submitting your Ballot to vote on the Plan.

The Debtors urge each Holder of a Claim to consult with its own advisors with respect to any legal, financial, securities, tax, or business advice in reviewing this Disclosure Statement, the Plan, and each transaction contemplated by the Plan.

The Debtors strongly encourage Holders of Claims in Class 3 to read this Disclosure Statement and the Plan in their entirety before voting to accept or reject the Plan. Assuming the requisite acceptances to the Plan are obtained, the Debtors will seek the Bankruptcy Court's approval of the Plan at the Confirmation Hearing.

---

### RECOMMENDATION BY THE DEBTORS

EACH DEBTOR HAS APPROVED THE TRANSACTIONS CONTEMPLATED BY THE PLAN AND DESCRIBED IN THIS DISCLOSURE STATEMENT, AND EACH DEBTOR BELIEVES THAT THE PLAN IS FAIR AND EQUITABLE, MAXIMIZES THE VALUE OF EACH OF THE DEBTOR'S ESTATES, AND PROVIDES THE BEST RECOVERY TO CREDITORS. EACH OF THE DEBTORS, THEREFORE, STRONGLY RECOMMENDS THAT ALL HOLDERS OF CLAIMS WHOSE VOTES ARE BEING SOLICITED SUBMIT BALLOTS TO ACCEPT THE PLAN BY RETURNING THEIR BALLOTS SO AS TO BE ACTUALLY RECEIVED NO LATER THAN JULY 2, 2020 AT 1:00 P.M. (PREVAILING MOUNTAIN TIME) PURSUANT TO THE INSTRUCTIONS SET FORTH HEREIN AND IN THE BALLOTS.

---

[1] Capitalized terms used but not defined herein have the meanings given to such terms in the Plan.

## DISCLAIMER

This Disclosure Statement contains summaries of certain provisions of the Plan and certain other documents and financial information. The information included in this Disclosure Statement is provided solely for the purpose of soliciting acceptances of the Plan and should not be relied upon for any purpose other than to determine whether and how to vote on the Plan. All holders of Claims entitled to vote are advised and encouraged to read this Disclosure Statement and the Plan in their entirety before voting. The Debtors believe that these summaries are fair and accurate. In the event of any inconsistency or discrepancy between a description in the Disclosure Statement and the terms and provisions of the Plan or the other documents and financial information incorporated in the Disclosure Statement by reference, the Plan or the other documents and financial information, as the case may be, shall govern for all purposes.

Except as otherwise provided in the Plan or in accordance with applicable law, the Debtors are under no duty to update or supplement this Disclosure Statement. The Court's approval of this Disclosure Statement does not constitute a guarantee of the accuracy or completeness of the information contained herein or an endorsement of the merits of the Plan by the Court. The statements and financial information contained in this Disclosure Statement have been made as of the date of the Disclosure Statement unless otherwise specified. Holders of Claims reviewing the Disclosure Statement should not assume at the time of such review that there have been no changes in the facts set forth in the Disclosure Statement since the date of the Disclosure Statement. Each holder of a Claim entitled to vote on the Plan should carefully review the Plan and this Disclosure Statement in their entirety before casting a ballot. No holder of a Claim should rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in this Disclosure Statement, the documents attached to this Disclosure Statement, and the Plan. The Disclosure Statement does not constitute legal, business, financial, or tax advice. Any entities desiring any such advice should consult with their own advisors. This Disclosure Statement has not been approved or disapproved by the United States Securities and Exchange Commission (the "SEC") or the United States Trustee ("US Trustee"), nor has the SEC or the US Trustee commented upon the accuracy or adequacy of the statements contained in this Disclosure Statement. In addition, approval of this Disclosure Statement by the Bankruptcy Court does not constitute or imply approval by the Court of the Plan.

<u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................................. 1

II.    THE PLAN CONFIRMATION PROCESS ........................................................................ 1

   A.    Who May Vote to Accept or Reject the Plan ................................................................ 1

      1.    Allowed Claims and Interests ................................................................................... 1

      2.    Impaired Claims and Interests .................................................................................. 2

   B.    Votes Necessary to Confirm the Plan ........................................................................... 3

   C.    Confirmation Hearing ................................................................................................... 4

   D.    Objections to Confirmation ........................................................................................... 4

   E.    Cramdown: Treatment of Non-Consenting Classes ...................................................... 4

III.   BACKGROUND ................................................................................................................ 4

   A.    Description of the Debtors' Business and Assets ........................................................... 4

   B.    Events Leading to the Chapter 11 Filings ..................................................................... 5

   C.    Description of the Debtors' Prepetition Liabilities ........................................................ 6

      1.    CEC DB .................................................................................................................. 6

      2.    CEC RAD ................................................................................................................ 7

      3.    CEC RA ................................................................................................................... 7

   D.    Avoidance Actions ........................................................................................................ 8

IV.    SUMMARY OF PLAN OF LIQUIDATION ..................................................................... 8

   A.    Designation of Classes and Treatment of Claims and Interests Generally .................... 8

   B.    Distinction Between Secured Claims and Unsecured Claims and Valuation of Collateral ......... 8

   C.    Summary of Classification and Treatment of Claims and Interests Under the Plan ................... 8

      1.    Allowance and Treatment of Unclassified Claims .................................................... 9

      2.    Allowance and Treatment of Classified Claims ..................................................... 12

      3.    Controversy Concerning Impairment ..................................................................... 14

      4.    Elimination of Vacant Classes ............................................................................... 14

      5.    Voting Classes; Presumed Acceptance by Non-Voting Classes ............................. 14

      6.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .......... 14

   D.    Asset Sale of CEC Assets to CED BTM ..................................................................... 14

      1.    Confirmation Order ............................................................................................... 14

      2.    No Liabilities Other Than Assumed Liabilities ...................................................... 15

      3.    No Successor Liability ........................................................................................... 15

      4.    Break-up Fee ......................................................................................................... 16

      5.    No Interference; Cooperation ................................................................................ 16

      6.    Conditions Precedent to Closing ........................................................................... 16

   E.    Provisions for Implementation of the Plan .................................................................. 16

|   | 1. | Substantive Consolidation | 16 |
|---|---|---|---|
|   | 2. | General Settlement of Claims and Interests | 17 |
|   | 3. | Authority to Effectuate Plan | 17 |
|   | 4. | Vesting of Assets in the Liquidating Debtor | 18 |
|   | 5. | Corporate Action; Dissolution | 18 |
|   | 6. | Closing of the Chapter 11 Cases | 18 |
|   | 7. | Winding Down of Affairs | 18 |
|   | 8. | Section 1146(a) Exemption | 18 |
| F. | | Treatment of Executory Contracts and Unexpired Leases | 19 |
|   | 1. | Assumption/Assignment/Rejection of Executory Contracts and Unexpired Leases | 19 |
|   | 2. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 20 |
|   | 3. | Rejection Damages Claims | 20 |
|   | 4. | Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases | 20 |
|   | 5. | Intercompany Contracts; Contracts and Leases After the Petition Date | 21 |
|   | 6. | Reservation of Rights | 21 |
|   | 7. | Nonoccurrence of Effective Date | 21 |
| G. | | Provisions Governing Distributions | 21 |
|   | 1. | Timing and Calculation of Amounts to Be Distributed | 21 |
|   | 2. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 22 |
|   | 3. | Compliance with Tax Requirements/Allocations | 23 |
| H. | | Procedures for Resolving Contingent, Unliquidated, and Disputed Claims | 23 |
|   | 1. | Prosecution of Objections to Claims | 23 |
|   | 2. | No Filing of Proofs of Claim | 23 |
|   | 3. | Procedures Regarding Disputed Claims | 23 |
|   | 4. | Special Rules for Distributions to Holders of Disputed Claims | 24 |
| I. | | Conditions Precedent to the Effective Date of the Plan | 24 |
|   | 1. | Conditions Precedent to the Effective Date | 24 |
|   | 2. | Waiver of Conditions Precedent | 26 |
|   | 3. | Effect of Non-Occurrence of Conditions to Consummation | 26 |
|   | 4. | Substantial Consummation | 26 |
| J. | | Retention of Jurisdiction | 26 |
| V. | | CONFIRMATION REQUIREMENTS | 28 |
| A. | | Acceptance | 28 |
|   | 1. | Votes Necessary for a Class to Accept the Plan | 28 |
|   | 2. | Votes Necessary to Confirm the Plan | 28 |
| B. | | Liquidation Analysis | 29 |

C.      Feasibility ........................................................................................................ 30

D.      Alternatives to Confirmation and Consummation of the Plan ........................ 30

E.      Confirmation Without Acceptance by All Impaired Classes ......................... 30

    1.      No Unfair Discrimination ................................................................ 30

    2.      Fair and Equitable Test .................................................................. 31

VI.     EFFECT OF CONFIRMATION OF THE PLAN ...................................................... 31

A.      Compromise and Settlement of Claims, Interests, and Controversies ......................... 31

B.      Releases by the Debtors .................................................................................. 32

C.      Releases by Holders of Claims and Interests ................................................. 33

D.      Exculpation ..................................................................................................... 34

E.      Injunction ........................................................................................................ 35

F.      Waiver and Release of Causes of Action ....................................................... 36

G.      Release of Avoidance Actions ........................................................................ 36

VII.    RISK FACTORS ................................................................................................. 36

A.      A Holder of a Claim or Interest May Object to, and the Bankruptcy Court May Disagree with, the Debtors' Classification of Claims and Interests ................................................. 36

B.      The Debtors May Not Be Able to Satisfy the Voting Requirements for Confirmation of the Plan 37

C.      The Bankruptcy Court May Not Confirm the Plan or May Require the Debtors to Re-Solicit Votes with Respect to the Plan ................................................................................. 37

D.      Even if the Debtors Receive All Necessary Acceptances for the Plan to Become Effective, the Debtors May Fail to Meet All Conditions Precedent to Effectiveness of the Plan .................. 38

E.      The Bankruptcy Court May Find the Solicitation of Acceptances Inadequate .......................... 38

F.      There is a Risk of Termination of the Plan Support Agreement .................................. 39

G.      The Bankruptcy Court May Dismiss Some or All of the Chapter 11 Cases .......................... 39

H.      The United States Trustee or Other Parties May Object to the Plan on Account of the Releases, Exculpations, or Injunction Provisions ................................................................. 39

I.      The Bankruptcy Court May Not Approve the DIP Facility ......................................... 39

J.      Tax Consequences ........................................................................................... 40

VIII.   CONCLUSION ................................................................................................... 40

## I.  INTRODUCTION

The Plan implements a pre-packaged liquidation agreed to by and among CEC Development Borrower, LLC, CEC Renewable Assets Development, LLC, and CEC Renewable Assets, LLC (the "Debtors") and the Debtors' stakeholders.  The Plan provides for the sale of substantially all of the assets of CEC DB to CED BTM Development Solar, LLC.

A copy of the Plan is attached hereto as **Exhibit A**.  To evidence their support of the Debtors' liquidation, the Debtors and their stakeholders executed the Plan Support Agreement, a copy of which is attached hereto as **Exhibit B**.

The purpose of this Disclosure Statement is to provide Holders of Claims entitled to vote to accept or reject the Plan with adequate information about (a) the Debtors' businesses and certain historical events, (b) the Chapter 11 Cases, (c) the rights of Holders of Claims and Interests under the Plan, and (d) other information necessary to enable each Holder of a Claim to make an informed judgment as to whether to vote to accept or reject the Plan.

## II.  THE PLAN CONFIRMATION PROCESS

What follows in this Section II is a general discussion of the rules governing who may vote to accept or reject a chapter 11 plan of liquidation, the votes necessary to confirm a chapter 11 plan, and the circumstances under which a plan may be confirmed, even if a particular class of creditors or interest holders does not accept the plan.

### A.  Who May Vote to Accept or Reject the Plan

To vote to accept or reject the Plan, your claim or interest must be "allowed" and "impaired," and the Plan must provide that you will receive or retain some value.  Holders of unimpaired claims are deemed to have accepted the Plan and do not vote, though they may object to confirmation of the Plan to the extent they otherwise have standing to do so. Holders of claims or interests that do not receive or retain any value under the Plan are deemed to reject the Plan. As defined by the Bankruptcy Code, a claim generally includes all rights to payment from a debtor, while an interest generally represents an ownership stake in a debtor.

### 1.  Allowed Claims and Interests

With the exceptions explained below, under the Bankruptcy Code, a claim or interest is generally allowed only if a proof of the claim or interest is properly filed before the bar date for doing so, and either no party in interest has objected or the court has entered an order allowing the claim or interest. Under certain circumstances as provided in the Bankruptcy Code, a creditor may have an allowed claim even if a proof of claim was not filed and the bar date for filing a proof of claim has passed. For example, a claim may be deemed allowed if the claim is listed on the debtor's

schedules of liabilities filed with the court, and is not scheduled as disputed, contingent, or unliquidated.

A holder's Claim must be an allowed Claim, or must be allowed for purposes of voting, for the holder of such Claim to have the right to vote on the Plan. Generally, for voting purposes only, a claim is deemed allowed to the extent that: (1) either (a) a proof of claim was timely filed or (b) a proof of claim was deemed timely filed either under Bankruptcy Rule 3003(b)(1)-(2) or by a final order; and (2) (a) the claim is not a claim subject to an objection or (b) the claim is allowed either by a final order or under the plan.

Under a plan, a creditor whose claim is not an allowed claim nevertheless may be entitled to vote to accept or reject the plan if the creditor has timely filed a proof of claim that is not the subject of an objection filed before the plan confirmation hearing or a Bankruptcy Court order allowing the Claim entered before the confirmation hearing.

An entity whose claim is subject to an objection is not eligible to vote on the plan unless and until (1) that objection is resolved in such entity's favor or (2) after notice and a hearing under Bankruptcy Rule 3018(a), the Bankruptcy Court temporarily allows the entity's claim for the purpose of voting to accept or reject the Plan. Any entity that seeks temporary allowance of its claim for voting purposes must promptly take steps necessary to arrange for an appropriate and timely hearing with the Court.

## 2.      Impaired Claims and Interests

Article III of the Plan and Section IV.C of this Disclosure Statement describe the Classes of Claims and Interests that are be impaired or unimpaired under the Plan.

Generally speaking, under the Bankruptcy Code, a class of claims or interests is "impaired" if the plan alters the legal, equitable, or contractual rights of the members of the class, even if the alteration is beneficial to the creditors or interest holders. More specifically, Bankruptcy Code section 1124 provides that a claim or interest is impaired for purposes of chapter 11 unless the Plan:

(i)      leaves unaltered the legal, equitable and contractual rights of the holder of such claim or interest; or

(ii)      notwithstanding any contractual provision or applicable law that entitles the holder of a claim or interest to receive accelerated payment of its claim or interest after the occurrence of a default:

(a)      cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default that consists of a breach of any provision relating to the insolvency or financial condition of the debtor at any time before the closing of the case, the commencement of a case under the Bankruptcy Code, or the appointment of or taking possession by a trustee in a case under the Bankruptcy Code.

(b)      reinstates the maturity of such claim or interest as it existed prior to the default;

(c)      compensates the holder of such claim or interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law;

(d)      if such claim or interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(i)(A) of the Bankruptcy Code, compensates the holder of such claim or interest (other than the debtor or an insider of the debtor) for any actual pecuniary loss incurred by such holder as a result of such failure; and

(e)      does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitled the holder of such claim or interest.

## B.      Votes Necessary to Confirm the Plan

Under the Bankruptcy Code, impaired claims or interests are placed in classes under a plan, and it is the class that must accept that plan. Article III of the Plan and Section IV.C of this Disclosure Statement summarize the classification of all Claims and Interests under the Plan. There also are some types of claims that are unclassified because the Bankruptcy Code requires that they be treated a certain way. These claims are considered unimpaired, and their holders cannot vote.  Unclassified claims are described in Article II of the Plan and Section IV.C of this Disclosure Statement.

The Bankruptcy Code does not require that each claimant or shareholder vote in favor of a plan in order for the court to confirm a plan. Rather, a plan must be accepted by each class of claims and interests (subject to the "cramdown" exception discussed below). A class of claims accepts the plan if, of the claimants in the class who actually vote on the plan, such claimants holding at least two-thirds in dollar amount and more than one-half in number of allowed claims vote to accept the plan. For example, if a hypothetical class has twenty-five creditors that vote and the total dollar amount of those creditors' claims is $1,000,000, then for such class to have accepted a plan, thirteen or more of those creditors must have voted to accept the plan (a simple majority) and the claims of the creditors voting to accept the plan must total at least $666,667 (a two-thirds majority). A class of interest holders accepts a plan if, of the holders in such class who actually vote on such plan, at least two-thirds in amount vote to accept the Plan.

Under the Bankruptcy Code, a bankruptcy court may confirm a plan if at least one class of impaired claims has voted to accept that plan (without counting the votes of any insiders whose claims are classified within that class) and if certain statutory requirements are met both as to non-consenting members within a consenting class and as to rejecting classes.

### C.     Confirmation Hearing

Notice will be promptly provided after the commencement of the Chapter 11 Cases of the date, time and location of the Confirmation Hearing, which will be conducted to determine whether the Bankruptcy Court will confirm the Plan. Even if a plan receives the requisite votes, a plan will not become binding unless and until, among other things, the Bankruptcy Court makes an independent determination that the plan satisfies the various confirmation requirements set forth in section 1129 of the Bankruptcy Code. This determination will be made at the confirmation hearing.  As set forth below, any holder of an allowed claim or interest may appear and object to confirmation of the Plan.

### D.     Objections to Confirmation

The notice of the Confirmation Hearing will also provide a deadline by which any party that objects to confirmation of the Plan must file and serve its objection and evidence in support thereof.  Any objection to confirmation of the Plan must be in writing, specify the name and address of the party objecting, set forth the amount of the objecting party's claims and any other grounds giving the objector standing to object, and set forth the specific grounds for the objection. Such objection shall be served on the parties identified in this Disclosure Statement.

Failure to properly and timely file an opposition to Plan confirmation and appear at the Confirmation Hearing will be deemed to be consent to the Plan's confirmation. If you wish to obtain more information, you should contact David V. Wadsworth, 2580 West Main Street, Suite 200, Littleton, CO 80120, Telephone: (303) 296-1999, Email: dwadsworth@wgwc-law.com.

### E.     Cramdown: Treatment of Non-Consenting Classes

Even if all classes do not consent to the proposed treatment of their claims under a plan, a plan nonetheless may be confirmed if the dissenting classes are treated in the manner prescribed by the Bankruptcy Code. The process by which a plan is confirmed, notwithstanding the existence of a dissenting class, is commonly referred to as "cramdown." The Bankruptcy Code allows dissenting classes to be crammed down if the plan does not "discriminate unfairly" and is "fair and equitable." The Bankruptcy Code does not define unfair discrimination, but it does set forth certain minimum requirements for "fair and equitable" treatment.

## III.     BACKGROUND

### A.     Description of the Debtors' Business and Assets

Debtors are subsidiaries of Clean Energy Collective, LLC ("CEC").  CEC is the nation's leader in delivering community-shared, clean energy solutions.  CEC develops and has managed mid-scale solar energy facilities across the country that are collectively owned by participating utility customers.  For each solar array or "Project" it develops, CEC, or a subsidiary such as CEC DB, forms a separate "Project Company."  In its development of each Project, CEC, among other things, identifies and negotiates for the purchase of suitable real estate upon which the solar array

4

can built, obtains the permitting required to construct the solar array, and negotiates with utility companies in order to establish an interconnection services agreement to transmit the energy generated by the solar array to the end users.

Until recently, as part of its Community Solar Platform, CEC also solicited and engaged subscribers for the community solar facilities. CEC recently sold the Community Solar Platform facet of its operations. Historically, once CEC developed a Project as described above, it either continued to own and operate the Project ("Legacy Project") or sold the Project to another owner/operator who would then build out the infrastructure for the solar array. With the sale of its Community Solar Platform, CEC ceased to own and operate any new Projects, and now develops Projects for sale.

Debtors are holding companies for CEC's Project Companies and were created to facilitate the separate financing and development of each Project. CEC DB holds and owns the membership interests in CEC's Project Companies. CEC DB currently owns the membership interests in 45 Project Companies. These membership interests and trailing contract payment rights from sold Projects, described below, are CEC DB's only assets.

CEC DB is wholly owned by CEC RAD. The membership interest in CEC DB is CEC RAD's only asset.

CEC RAD is wholly owned by CEC RA. The membership interest in CEC RAD is CEC RA's only asset.

### B.      Events Leading to the Chapter 11 Filings

The Debtors' bankruptcy filings were precipitated by persistent and insurmountable difficulties in completing the sale of its Projects. Over the course of the last few years, CEC has completely or substantially completed the development of numerous Projects. CEC contracted with a purchaser to sell several of those Projects. The purchaser imposed many rigorous requirements on the sale of the Projects, and as a result CEC has only been able to close sales of three of the projects.

In addition, the recent spread of COVID-19 has caused significant delays in CEC's Project development and sales. As government agencies struggle to function at full capacity, the permitting process has slowed to a near halt, and prospective purchasers have been forced to focus their attention elsewhere.

Debtor CEC DB currently owns 47 Project Companies. For seven of these Projects, all real property has been acquired, all necessary permitting has been obtained, and interconnection services agreements with applicable utilities have been established. For some of these seven Projects, subscribed have also been secured. These seven Projects are ready for sale.

The remaining 40 Projects are at various stages in the process. Because CEC and the Debtors have been unable to sell these Projects, CEC has not realized the revenue it budgeted for

and has been forced to carry the development costs. Under current conditions, the Debtors have no reasonable prospects of being able to fully repay their debt obligations.

CEC projected that the Project Companies would run out of operating capital by mid-June. To prevent the shutdown of the Project Companies and to preserve their value, in March, CEC and the Debtors began discussions on two fronts. First, CEC and the Debtors reached out to its their secured lenders regarding the possibility of restructuring the terms of various loan agreements as well as the possibility of borrowing additional funds. Second, CEC and the Debtors began discussions with Consolidated Edison Development, Inc. regarding a possible sale of the Project Companies. Both sets of discussions involved substantial diligence, negotiation and interaction among the relevant parties. Those discussions resulted in the Debtors entering (a) the Plan Support Agreement attached hereto as **Exhibit B**; (b) the Membership Interest Purchase Agreement with CED BTM, a company created by Consolidated Edison Development, Inc. to acquire CEC DB's assets; and (c) the DIP Facility with FCS Advisors, LLC d/b/a Brevet Capital Advisors (the "DIP Facility Lender" and the "Dev Lender").

The DIP Facility Lender and the Senior Lenders support the Plan. Given the support for the Debtors' liquidation by the Debtors' stakeholders, the Debtors elected to pursue a prepackaged restructuring in the weeks leading up to the solicitation period to maximize value by minimizing both the costs of liquidating and the impact on the Project Companies' businesses. The Debtors believe that the Plan represents the most efficient route to liquidation.

The formulation of the Plan Support Agreement and Plan contemplated thereunder is a significant achievement for the Debtors and its creditors in the face of CEC's liquidity issues and operating environment. Each of the Debtors strongly believes that the Plan is in the best interests of each of their estates and represents the best available alternative for all stakeholders.

### C.     Description of the Debtors' Prepetition Liabilities

#### 1.     CEC DB

CEC DB has three creditors: Dev Lender, Ameresco, Inc. ("Ameresco") and SoCore MA Development, LLC ("SoCore").

CEC DB is indebted to CEC DB pursuant to the Development Loan Agreement, dated as of February 28, 2019 between CEC DB and NAI CEC Development Lender Inc. (as amended, supplemented, or otherwise modified from time to time) which was assigned to Dev Lender (the "***CDB Loan***"). The principal amount due under the CBD Loan as of the Petition Date is approximately $5,000,000.

CEC DB is indebted to Ameresco pursuant to a membership purchase agreement ("MIPA") between Ameresco, Inc. and Clean Energy Community Holdco 1, LLC ("Holdco"). Holdco assigned its interest in this MIPA to CEC DB. The principal amount due Ameresco, Inc. as of the Petition Date is approximately $365,981.

CEC DB and SoCore MA Development, LLC ("SoCore") are parties to the Engie MIPA. CEC DB is rejecting the Engie MIPA in connection with Confirmation of the Plan. CEC DB is

willing to refund SoCore the $30,432.50 in development expenses advanced by SoCore prepetition but disputes any rejection claim asserted by SoCore because the Engie MIPA does not contemplate such claims under the circumstances.

### 2. CEC RAD

None.

### 3. CEC RA

CEC RA's debt are all secured guaranty obligations. CEC RA is indebted to Dev Lender pursuant to its guaranty of the Tranche B Loan. CEC RA also pledged all of its assets as security for the Tranche B Loan. CEC RA is also indebted to the Senior Lenders pursuant to the following agreements:

- CEC RA is indebted to the Senior Lenders pursuant to its guaranty of the Note Purchase Agreement, dated as of February 5, 2016, by and among the Senior Lenders and CEC;

- CEC RA is indebted to BCC pursuant to its guaranty of (a) the Secured Convertible Promissory Note issued by CEC to BCC, dated February 5, 2016, as amended by the First Amendment to Secured Promissory Note, dated September 5, 2017 and (b) the Loan Agreement, dated November 30, 2012 (as amended or modified from time to time), by and among BCC, as lender and administrative agent, CEC, and the guarantors party thereto;

- CEC is indebted to FSDG pursuant to its guaranty of (a) the Secured Convertible Promissory Note issued by CEC to FSDG, dated April 1, 2016, as amended by the First Amendment to Secured Promissory Note, dated September 5, 2017 and (b) the Second Lien Loan Agreement, dated November 21, 2014 (as amended or modified from time to time), by and among FSDG, as lender, CEC, and the guarantors party thereto.

The total amount owed FSDG as of the Petition Date is $27,316,699. The total amount owed BCC as of the Petition Date is $5,055,213.

The Senior Lien/Junior Intercreditor Agreement, dated November 13, 2018 (the "Prepetition Intercreditor Agreement") governs the rights of Dev Lender and Senior Lenders. Dev Lender is the senior secured party, and the Senior Lenders hold a junior position to Dev Lender. The Senior Lenders do not have Liens on assets owned be CEC DB. However, CEC DB is only entitled to retain funds received as reimbursement for development expenses. All excess project payments are pledged to CEC and the Senior Lenders. CEC DB is required to transfer such excess funds to CEC. Such funds are subject to the Senior Lenders' Liens.

### D.    Avoidance Actions

The Debtors do not believe there are any Avoidance Actions.  The Plan provides for the waiver and release of any such claims.

## IV.    SUMMARY OF PLAN OF LIQUIDATION

The following is a narrative description of certain provisions of the Plan. The following summary of the Plan is qualified in its entirety by the actual terms of the Plan.  In the event of any conflict, the terms of the Plan will control over any summary set forth in this Disclosure Statement.

### A.    Designation of Classes and Treatment of Claims and Interests Generally

The Bankruptcy Code requires that a chapter 11 plan divide the different claims against, and equity interests in, a debtor into separate classes based upon their legal nature.  Claims of a substantially similar legal nature are usually classified together, as are equity interests of a substantially similar legal nature.  The Bankruptcy Code does not require the classification of administrative claims and certain priority claims, and they are typically denominated "unclassified claims."

A chapter 11 plan must designate each separate class of claims and equity interests either as "impaired" (affected by the plan) or "unimpaired" (unaffected by the plan).  If a class of claims is "impaired" under the Bankruptcy Code, the holders of claims in that class are entitled to vote on the plan (unless the plan provides for no distribution to the class, in which case the class is deemed to reject the plan), and to receive, under the plan, property with a value at least equal to the value that the holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code. If a class of claims is unimpaired, the holders of claims in that class are deemed to accept the plan.

### B.    Distinction Between Secured Claims and Unsecured Claims and Valuation of Collateral

Under the Bankruptcy Code, a claim is divided between a "secured" and an "unsecured" claim. A claim is secured only to the extent (i) that the lien securing such claim is valid and enforceable and (ii) of the value of the collateral securing such claim (in this Case determined as of the Confirmation Date) exceeds the allowed portion of the claim.  The rest of the claim is unsecured.

In this case, Dev Lender and Ameresco, Inc. hold Secured Claims against CEC DB and the Senior Lenders hold Secured Claims against CEC RA.

### C.    Summary of Classification and Treatment of Claims and Interests Under the Plan

This Section describes the classification of Claims and Interests under the Plan except for General Administrative Claims, Professional Fee Claims, Priority Tax Claims and the DIP Facility

Claim (none of which are classified), for all purposes, including voting, confirmation, and distributions under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description. To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class. In addition, this Section describes the treatment of Claims and Interests under the Plan. The following table summarizes the classification of Claims and Interests under the Plan, subject to the more specific provisions of the Plan and the following, more detailed discussion of the Plan:

| Class | Designation | Impairment | Entitled to Vote | Recovery Under Plan | Liquidation Recovery |
|-------|-------------|------------|------------------|---------------------|----------------------|
| Class 1 | Secured Claim – Dev Lender and Tranche B Lender | Unimpaired | No | 100% | 50% |
| Class 2 | Ameresco, Inc. | Unimpaired | No | 100% | 50% |
| Class 3 | Senior Lenders | Impaired | Yes | See below | 0% |
| Class 4 | General Unsecured Creditors | Impaired | No | 0% | 0% |
| Class 5 | Intercompany Claims | Impaired | No | 0% | 0% |
| Class 6 | Intercompany Interests | Impaired | No | 0% | 0% |
| Class 7 | Equity Interests | Impaired | No | N/A | 0% |

1.      **Allowance and Treatment of Unclassified Claims**

a.      **Administrative Claims**

i.      **General Administrative Claims**

Except to the extent that a Holder of an Allowed General Administrative Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Administrative Claim, each Holder of an Allowed General Administrative Claim, which, for the avoidance of doubt, excludes Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code, will receive in full and final satisfaction of its General Administrative Claim an amount of Cash from the Claim Escrow Account equal to the amount of such Allowed General Administrative Claim in accordance with the following: (a) if a General Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed General Administrative Claim is

9

due or as soon as reasonably practicable thereafter); (b) if such General Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such General Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed General Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim without any further action by the Holders of such Allowed General Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such Holder and the Debtors (with the reasonable consent of CED BTM) or Liquidating Debtor, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

### ii.    Professional Fee Claims

#### (a)    Final Fee Applications and Payment

All final requests for Professional Fee Claims shall be filed no later than 30 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

The amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Liquidating Debtor from the Claim Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order.

#### (b)    Payment of Certain Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidating Debtor shall pay in Cash from the Claim Escrow Account the reasonable legal fees and expenses incurred by the Liquidating Debtor after the Effective Date in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court. If the Debtors or Liquidating Debtor (as applicable) dispute the reasonableness of any such invoice, the Debtors or Liquidating Debtor (as applicable) or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein. Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Debtor or Liquidating Debtor (as applicable) may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**b.      DIP Facility Claim**

The DIP Facility Claim shall be Allowed as of the Effective Date in an amount equal to (a) the principal amount outstanding under the DIP Facility on such date, (b) all interest accrued and unpaid thereon to the date of payment, and (c) any and all accrued and unpaid fees, expenses and indemnification or other obligations of any kind payable under the DIP Facility Documents.

Except to the extent that the DIP Facility Lender agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, its Allowed DIP Facility Claim, on the Effective Date, the DIP Facility Lender shall receive a Cash payment in an amount equal to the full of the Allowed DIP Facility Claim from the MIPA Sale Proceeds (and, to the extent required, from the other assets of the Debtors).  The DIP Facility Claim shall be paid prior to any other Claims.

**c.      Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Liquidating Debtor and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

The Debtors do not believe any Priority Tax Claims exist.

**d.      Statutory Fees**

All fees due and payable pursuant to section 1930 of title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' business (or such amount agreed to with the United States Trustee), for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. On and after the Effective Date, the Liquidating Debtor shall pay any and all such fees when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.

Except to the extent that a holder of an Allowed Tax Claim has been paid by the Estate prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Tax Claim will be paid cash in the Allowed amount of such Allowed Tax Claim on the Effective Date. The IRS filed a proof of claim for estimated 4th quarter 2019 taxes in the amount of $100.00.  The Debtor believes these taxes were timely paid and there are no Tax Claims.

2.      **Allowance and Treatment of Classified Claims**

Pursuant to Section 5.1 of the Plan, provided that the DIP Orders shall have been entered by the Bankruptcy Court, shall be Final Orders, and shall not have been stayed or modified or vacated, and provided that the DIP Facility Claim has been paid in full, the Plan provides for the consensual substantive consolidation of the Estates into a single Estate for all purposes associated with Confirmation and Consummation. As a result of the substantive consolidation of the Estates, each Class of Claims and Interests are treated as against a single consolidated Estate without regard to the separate identification of the Debtors.

a.      **Class 1 (Allowed Secured Claim – Dev Lender & Tranche B Lender)**

Class 1 is comprised of the Allowed Secured Claim of Dev Lender and Tranche B Lender. The Secured Claims of Dev Lender and Tranche B Lender shall have been rolled-up and become part of the DIP Facility Claim and will be treated as set forth above with respect to the DIP Facility Claim.  In an abundance of caution, because the claims of Dev Lender and Tranche B Lender are also Secured Claims, they are treated under Class 1, and to the extent not yet paid, shall receive payment in full in Cash.

Class 1 is Unimpaired and Dev Lender and Tranche B Lender are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Dev Lender and Tranche B Lender are not entitled to vote to accept or reject the Plan.

b.      **Class 2 (Allowed Secured Claim – Ameresco, Inc.)**

Class 2 consists of the Allowed Secured Claim of Ameresco, Inc.  The Allowed Secured Claim of Ameresco, Inc. shall be paid in full prior to the MIPA Closing.

Class 2 is Unimpaired and Ameresco, Inc. is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Ameresco, Inc. is not entitled to vote to accept or reject the Plan.

c.      **Class 3 (Allowed Secured Claims – Senior Lenders)**

Class 3 consists of the Allowed Secured Claims of the Senior Lenders. The Senior Lenders Secured Claims are Allowed and shall have a first priority Lien on the funds in the Claim Escrow Account after repayment of the DIP Facility Claim and the Allowed Class 1 Claims and Class 2 Claim ("Senior Lenders' Lien") that shall be subordinated only to the Liens of Dev Lender and Tranche B Lender with respect to the Claim Escrow Account.  The Senior Lenders' Lien and rights to the Claim Escrow Account funds transferred to CEC after entry of the Final Decree shall be subject to the terms of the loan documents by and between the Senior Lenders and CEC.

Class 3 is Impaired.  Therefore, the Senior Lenders are entitled to vote to accept or reject the Plan.

### d.   Class 4 (Allowed General Unsecured Claims)

Class 4 consists of all General Unsecured Claims.  Holders of Allowed General Unsecured Claims will receive no distribution.

Class 4 is Impaired and Holders of Class 4 General Unsecured Claims are deemed to rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 4 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

The only Holders of Class 4 Claim are deficiency claims held by the Senior Lenders and a potential rejection claim of SoCore.  While this Class is deemed to reject the Plan by statute, the Senior Lenders dominate the Class and support Confirmation.

### e.   Class 5 (Intercompany Claims)

Class 5 consists of all Intercompany Claims.  On the Effective Date, each Intercompany Claim shall be cancelled and released without any distribution.

Holders of Intercompany Claims are Impaired and such Holders of Intercompany Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

### f.   Class 6 (Intercompany Interests)

Class 6 consists of all Intercompany Interests.  On the Effective Date, Intercompany Interests shall be cancelled and released without any distribution.

Holders of Intercompany Interests are Impaired, and such Holders of Intercompany Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

### g.   Class 7 (Equity Interests)

Class 7 consists of the Equity Interests in the Debtors.  On the Effective Date, Equity Interests in the Debtors shall be cancelled and released without any distribution.

Holders of Equity Interests are Impaired, and such Holders of Equity Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Equity Interests are not entitled to vote to accept or reject the Plan.

### 3. Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### 4. Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing, shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 5. Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims or Interests eligible to vote and no Holder of Claims or Interests eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

### 6. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article XI of the Plan (subject to the terms of the Plan Support Agreement) to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

### D. Asset Sale of CEC Assets to CED BTM

### 1. Confirmation Order

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the CED MIPA and the sale of the Acquired Interests described therein to CED BTM free and clear of Liens, Claims and other encumbrances pursuant to sections 363(b), 363(f) and 1123(a)(5)(D) of the Bankruptcy Code. Liens, Claims and other encumbrances shall attach to the CED MIPA Sale Proceeds and be distributed as provided in the Plan. For the avoidance of doubt, the DIP Facility Claim shall be secured by a first in priority lien on the MIPA Sale Proceeds.

The Confirmation Order shall include findings of fact and conclusions of law that (a) the sale to CED BTM was properly noticed and interested parties received adequate opportunity to object to the sale; (b) the parties to the CED MIPA have full corporate power and authority to

execute the CED MIPA and deliver all documents contemplated thereby; (c) the Acquired Interests are property of CEC DB's Estate pursuant to section 541(a) of the Bankruptcy Code; (d) the sale of the Acquired Interests pursuant to the CED MIPA is an appropriate exercise of the Debtors' business judgment and is in the best interests of the Debtors, the Estates, and creditors; (e) the requirements of section 363(f) have been satisfied because Dev Lender and the DIP Facility Lender consent to the sale; (f) the total consideration to be paid for the Acquired Interests by CED BTM is fair and reasonable and constitutes fair consideration and reasonably equivalent value (as those terms are defined in the Bankruptcy Code and the Colorado Uniform Fraudulent Transfer Act, C.R.S. § 38-8-101 *et seq.*); (g) the terms and conditions of the CED MIPA were negotiated, proposed, and agreed to by CEC DB and CED BTM without collusion, in good faith, and at arm's-length; (h) neither CEC DB nor CED BTM have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to the approval of the CED MIPA and CED BTM is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code; (i) CED BTM is not an insider of any of the Debtors; (j) the transfer of the Acquired Interests to CED BTM pursuant to the CED MIPA will be a legal, valid, and effective transfer of the Acquired Interests and will, upon the occurrence of the closing, vest in CED BTM all rights, title, and interest of CEC DB in the Acquired Interests, free and clear of any and all Liens, Claims and other encumbrances in accordance with section 363 of the Bankruptcy Code; and (k) the CED MIPA approved by the Confirmation Order shall not be subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

## 2.    No Liabilities Other Than Assumed Liabilities

CED BTM shall have no liability whatsoever for any obligations of, or claims (including without limitation as defined in section 101(5) of the Bankruptcy Code) against, the Debtors, except with respect to the liabilities expressly assumed in the CED MIPA.

The Debtors shall be deemed to have released and forever discharged CED BTM and any of its successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the Acquired Interests or the CED MIPA, except with respect to assumed Liabilities and CED BTM's obligations under the CED MIPA.

## 3.    No Successor Liability

CED BTM shall not be deemed, as a result of any action taken in connection with the purchase of the Acquired Interests, to: (1) be a successor (or other such similarly situated party) to CEC DB (other than as expressly stated in the CED MIPA); (2) have, *de facto* or otherwise, merged with or into CEC DB; (3) be a mere continuation of CEC DB or its estate (and there is no continuity of enterprise between CED BTM and CEC DB); or (4) be holding itself out to the public as a continuation of CEC DB. CED BTM is not acquiring or assuming any liability, warranty, or other obligation of CEC DB, except as expressly set forth in the CED MIPA.

### 4. Break-up Fee

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Break-up Fee of Five Hundred Thousand Dollars ($500,000.00) provided for in the CED MIPA. CE DB's obligation to pay the Break-up Fee shall constitute an Administrative Claim (which shall be a super priority administrative expense claim junior to the super priority administrative expense claim with respect to the DIP Facility Claim, but senior to all other administrative expense claims) of Debtors under section 364(c) of the Bankruptcy Code. For the avoidance of doubt, such Break-up Fee shall be payable only after payment in full of the DIP Facility Claim.

### 5. No Interference; Cooperation

Following the MIPA Closing Date, no holder of any Liens, Claims or other encumbrances in any of the Acquired Interests may interfere with CED BTM's use and enjoyment of the Acquired Interests based on or related to such Liens, Claims, or other encumbrances and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated under the CED MIPA.

Each of the Debtors' creditors shall be authorized and directed to, on the MIPA Closing Date, execute such documents and take all other actions as may be necessary, as determined by CEC BTM in its sole discretion, to release their interests against or in the Acquired Interests, if any, as such interests may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing Liens, Claims, or other encumbrances against or in any of the Acquired Interests shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims, or other encumbrances that the person or entity has with respect to any of the Acquired Interests or otherwise, the Debtors shall be authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to any of the Acquired Interests.

### 6. Conditions Precedent to Closing

CED BTM shall have no obligation to proceed with the closing of the CED MIPA until and unless all conditions precedent to its obligation to do so, as set forth in the CED MIPA, have been met, satisfied or waived in accordance with the terms of the CED MIPA.

### E. Provisions for Implementation of the Plan

### 1. Substantive Consolidation

The Plan shall serve as a motion by the Debtors seeking entry of a Bankruptcy Court order pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code substantively consolidating all of the Estates into a single consolidated Estate for all purposes associated with Confirmation

16

and Consummation. If substantive consolidation of all of the Estates is ordered, then on and after the Effective Date provided that the DIP Orders shall have been entered by the Bankruptcy Court, shall be Final Orders, and shall not have been stayed or modified or vacated, and provided that the DIP Facility Claim has been paid in full, all assets and liabilities of the Debtors shall be treated as though they were merged into the Estate of CEC DB for all purposes associated with Confirmation and Consummation, and all guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor shall be treated as one collective obligation of the Debtors. Substantive consolidation shall not affect any prepetition or postpetition guarantees, liens, or security interests that are required to be maintained under the Bankruptcy Code, under the Plan, any contract, instrument, or other agreement or document pursuant to the Plan, or, in connection with contracts or leases that were assumed or entered into during the Chapter 11 Cases. Any alleged defaults under any applicable agreement with the Debtors or their Affiliates arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.

Notwithstanding the substantive consolidation provided for herein, nothing shall affect the obligation of each and every Debtor to pay Quarterly Fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 until such time as a particular case is closed, dismissed, or converted.

### 2. General Settlement of Claims and Interests

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VII of the Plan, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

### 3. Authority to Effectuate Plan

Upon the entry of the Confirmation Order, all matters provided under the Plan shall be deemed authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order shall act as an order modifying the Debtors' operating agreements such that the provisions of the Plan can be effectuated. The Liquidating Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan and to effectuate the Distributions provided for thereunder.

### 4.     Vesting of Assets in the Liquidating Debtor

Except as otherwise provided herein and pursuant to the CED MIPA, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, pursuant to sections 1141(b) of the Bankruptcy Code, all property in each Debtor's Estate shall vest in the Liquidating Debtor.

### 5.     Corporate Action; Dissolution

The Plan will be administered by the Liquidating Debtor and all actions taken under the Plan in the name of the Debtors or Liquidating Debtor, as applicable, shall be taken in accordance with the provisions of the Plan. CEC will be the sole authorized representative and signatory of the Liquidating Debtor, with authority to render any and all services necessary to effectuate the terms of the Plan.

Upon the filing by the Liquidating Debtor of a certification with the Bankruptcy Court to the effect that all Distributions required under the Plan have been made (which may be included in the application for the entry of the Final Decree), the Debtors and Liquidating Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or Liquidating Debtor or payments to be made in connection therewith; provided, however, that the Debtors or Liquidating Debtor may, but will not be required to, take appropriate action to dissolve under applicable law.

### 6.     Closing of the Chapter 11 Cases

After all Disputed Claims filed against the Debtors have become Allowed Claims or have been Disallowed, and all Allowed Claims have been paid, the Liquidating Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### 7.     Winding Down of Affairs

Following the Effective Date, the Debtors and Liquidating Debtor shall not engage in any business or take any actions, except those necessary to consummate the Plan and wind down their affairs. On and after the Effective Date, the Liquidating Debtor may take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions imposed by the Plan or the Confirmation Order.

### 8.     Section 1146(a) Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan or pursuant to the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any

transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales or use tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### F.    Treatment of Executory Contracts and Unexpired Leases

#### 1.    Assumption/Assignment/Rejection of Executory Contracts and Unexpired Leases

A schedule of Executory Contracts and Unexpired Leases to be assumed and/or assumed and assigned is attached as <u>Exhibit B</u> to the Plan, which schedule may be amended by the Debtors so as to add or delete Executory Contracts or Unexpired Leases to or from said schedule at any time prior to entry of the Confirmation Order.  Except for Executory Contracts and Unexpired Leases listed on the schedule of Executory Contracts or Unexpired Leases to be assumed and assigned (as such schedule may be amended), each Executory Contract or Unexpired Lease shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtors; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume and/or assume and assign filed on or before the Confirmation Date; or (4) is otherwise  treated in a manner agreed upon in writing by the Debtors, CED BTM and the counterparty to the Executory Contract or Unexpired Lease.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions and assignments and rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Unless otherwise provided herein, each Executory Contract or Unexpired Lease that is assumed and assigned shall (i) include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan and (ii) exclude any provisions which purport to prohibit, restrict or condition the assignment of any such Executory Contracts or Unexpired Leases; provided, however, that any provisions which purport to prohibit, restrict or condition the assignment of any such Executory Contracts or Unexpired Leases shall not be enforceable for purposes of the Plan and with respect to any assignment of such Executory Contracts or Unexpired Leases under or pursuant to the terms of the Plan. In addition, modifications, amendments, supplements, and restatements to prepetition Executory Contracts and

19

Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith. Notwithstanding the foregoing, the Debtors shall have the right to terminate, amend, or modify any intercompany contracts, leases or other agreements without approval of the Bankruptcy Court.

### 2. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any Cure Claims shall be satisfied, pursuant to section 365(b)(l) of the Bankruptcy Code, by payment of the amount of the agreed upon Cure Claim in Cash, provided that the DIP Facility Claim has been paid in full, by the Liquidating Debtor on the second Business Day after the later of the Effective Date or the date of assumption or assumption and assignment, and otherwise in accordance with any orders entered by the Bankruptcy Court, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree in writing.

In the event of a dispute regarding: (a) the amount of any Cure Claim; (b) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under the Executory Contract or the Unexpired Lease to be assumed; or (c) the ability of CED BTM to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under the Executory Contract or the Unexpired Lease to be assumed and assigned, or (d) any other matter pertaining to assumption and/or assumption and assignment, the Cure Claims shall be paid following the entry of a Final Order resolving the dispute and approving the assumption and/or the assumption and assignment of such Executory Contracts or Unexpired Leases: provided, however, that the Debtors and Liquidating Debtor may settle any dispute  regarding the amount of any Cure Claim or any dispute regarding "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) without any further notice to or action, order, or approval of the Bankruptcy Court.

### 3. Rejection Damages Claims

In the event that the rejection of an Executory Contract or Unexpired Lease by any of the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or their respective properties or interests in property as agents, successors, or assigns, unless the party asserting such damages provides notice of the claims to counsel for the Debtors no later than thirty (30) days after the later of (a) the Effective Date or (b) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection of such executory contract or unexpired lease.  Any such Claims, to the extent Allowed, shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of this Plan.

### 4. Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such

contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

5. **Intercompany Contracts; Contracts and Leases After the Petition Date**

Intercompany contracts, and contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed under section 365 of the Bankruptcy Code, will be performed by the applicable Debtor liable thereunder in the ordinary course of its business. Such contracts and leases that are not rejected under the Plan shall survive and remain unaffected by entry of the Confirmation Order.

6. **Reservation of Rights**

Nothing contained in the Plan shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

7. **Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

G. **Provisions Governing Distributions**

1. **Timing and Calculation of Amounts to Be Distributed**

Except to the extent an Allowed Claim has been satisfied by the Debtors prior to the Effective Date (pursuant to an order of the Bankruptcy Court, in the ordinary course of business or otherwise), the Holder of an Allowed Claim and the Debtors agree otherwise, or unless otherwise provided in the Plan, Distributions to Holders of Allowed Claims to be made pursuant to the Plan will be so made on or as soon as reasonably practicable after the Effective Date.

To the extent a Claim has not been Allowed prior to or as of the Effective Date, Distributions to such Holders shall be made on or as soon as reasonable practicable after the date on which such Claim becomes Allowed in accordance with the provisions of the Plan. No Distribution provided under the Plan will be made on account of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim as set forth in Article VIII hereof.

In the event that any Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such Distribution or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Distributions made after the Effective Date shall be deemed to have been made on the Effective Date. Except as otherwise expressly provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for herein, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

2.      **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

Except as otherwise provided in the Plan, the Liquidating Debtor shall make Distributions from the Claim Escrow Account to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Liquidating Debtor.

The Liquidating Debtor shall not be required to make payments of less than $500 (whether Cash or otherwise) and shall not be required to make payments of fractions of dollars and such fractions of dollars shall be deemed to be zero.

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Liquidating Debtor has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Debtors (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in such property shall be discharged and forever barred.

Checks issued by the Liquidating Debtor on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check.  Requests for reissuance of any check shall be made directly to the Liquidating Debtor by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 180 days after the issuance of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Debtors or their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Debtors, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Debtors to attempt to locate any Holder of an Allowed Claim.

### 3. Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Debtors and Liquidating Debtor shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors and the Liquidating Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate.

### H. Procedures for Resolving Contingent, Unliquidated, and Disputed Claims

### 1. Prosecution of Objections to Claims

The Debtors and Liquidating Debtor, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan.  From and after the Effective Date, the Liquidating Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Liquidating Debtor also reserves the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

### 2. No Filing of Proofs of Claim

Holders of Claims and Interests shall not be required to (*and should not)* file proofs of claim with the Bankruptcy Court, the Debtors or any of the Debtors' advisors or agents.  On and subsequent to the Effective Date, except as otherwise provided herein, all Claims entitled to a distribution under the Plan will be paid in the ordinary course of business in accordance with the Debtors' books and records (as set forth in the Debtors' schedules and statements filed with Bankruptcy Court or any supplements or amendments thereto), which amounts, unless disputed, shall constitute the Allowed amount of such Claims.

### 3. Procedures Regarding Disputed Claims

The Debtors intend to make distributions required under the Plan in accordance with their books and records.  Unless disputed by a Holder of a Claim, the amount set forth in the books and records of the Debtors shall constitute the amount of the Allowed Claim of such Holder. If any such Holder of a Claim disagrees with the Debtors' books and records with respect to the Allowed amount of such Holder's Claim, such Holder must so advise the Debtors in writing not later than three (3) days prior to the Confirmation Date, in which event the Claim will become a Disputed Claim.  If the Debtors dispute any Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced. While the Debtors intend to attempt to resolve any such disputes consensually or through judicial means outside the Bankruptcy Court, the Debtors may elect, in their sole discretion, to file with

23

the Bankruptcy Court (or any other court of competent jurisdiction) an objection to the allowance of any Claim or any other appropriate motion or adversary proceeding with respect thereto, and litigate such objections to Final Order.

### 4. Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled, without any interest to be paid on account of such Claim.

### I. Conditions Precedent to the Effective Date of the Plan

### 1. Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to <u>Section 10.2</u> of the Plan:

       a.     The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

       b.     The Bankruptcy Court shall have entered the Confirmation Order, which shall:

    (1)    authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, and other agreements or documents created in connection with the Plan;

    (2)    decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

    (3)    approve the CED MIPA;

    (4)    authorize the Debtors or Liquidating Debtor, as applicable or necessary, to: (a) make all distributions and issuances as required under the Plan and (b) enter into any agreements, transactions, and sales of property;

    (5)    authorize the implementation of the Plan in accordance with its terms; and

    (6)    provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection

with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

c. All governmental and material third party approvals and consents, including Bankruptcy Court approval, that are necessary to implement the Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

d. The DIP Orders shall have been entered by the Bankruptcy Court, shall be Final Orders, and shall not have been stayed or modified or vacated.

e. The Debtors shall not be in default under the DIP Facility or the DIP Orders (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived by the DIP Lenders or cured by the Debtors in a manner consistent with the DIP Facility and the DIP Orders).

f. The CED MIPA shall have been executed and delivered by all of the entities that are parties thereto, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the Closing under the CED MIPA shall have been waived or satisfied in accordance with the terms thereof, and the closing of the CED MIPA shall be deemed to occur concurrently with the occurrence of the Effective Date.

g. The Plan Support Agreement shall not have terminated as to all parties thereto and shall remain in full force and effect and the parties thereto shall be in compliance therewith.

h. All professional fees and expenses of Retained Professionals approved by the Bankruptcy Court shall have been paid in full.

i. With respect to all actions, documents and agreements necessary to implement the Plan: (a) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (b) such documents and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable governmental units in accordance with applicable laws; and (c) such documents and agreements shall have been effected or executed.

j. All material authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the transactions contemplated herein shall have been obtained.

### 2.    Waiver of Conditions Precedent

The Debtors (with the prior consent of the DIP Facility Lender, the Senior Lenders, and CED BTM) may waive any of the conditions to the Effective Date set forth in <u>Section 10.1</u> of the Plan (except for the condition to the Effective Date set forth in <u>Section 10.1.2</u>) at any time, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan or consummate the Plan.

### 3.    Effect of Non-Occurrence of Conditions to Consummation

If the Effective Date does not occur on or before the termination of the Plan Support Agreement or the drop dead date provided in the CED MIPA, or if, prior to the Effective Date, the Confirmation Order is vacated pursuant to a Final Order, then (except as provided in any such Final Order): (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan, the Confirmation Order, the Disclosure Statement or the Plan Support Agreement shall: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

### 4.    Substantial Consummation

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## J.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against a Debtor, including the resolution of any request for payment of any Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

- decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

26

- resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

- ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

- adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

- enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

- enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

- grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

- issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

- hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Section 7.1 of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

27

- enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

- consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

- hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

- enter an order or Final Decree concluding or closing the Chapter 11 Cases;

- enforce all orders previously entered by the Bankruptcy Court; and

- hear any other matter not inconsistent with the Bankruptcy Code.

## V.      CONFIRMATION REQUIREMENTS

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues which they may wish to consider. The proponents CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Bankruptcy Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, that creditors or interest holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and that the Plan is feasible. These requirements are not the only requirements for confirmation.

### A.      Acceptance

#### 1.      Votes Necessary for a Class to Accept the Plan

A Class of Claims is considered to have accepted the Plan when more than one-half (½) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually voted, voted in favor of the Plan.

#### 2.      Votes Necessary to Confirm the Plan

If Impaired Classes exist, the Bankruptcy Court cannot confirm the Plan unless (1) at least one Impaired Class has accepted the Plan without counting the votes of any insiders within that

class, and (2) all Impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes.

**B.      Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a Holder of a Claim or Interest is in an Impaired Class and that Holder of a Claim or Interest does not vote to accept the Plan, then that Holder of a Claim or Interest must receive or retain under the Plan property of a value not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

In order to calculate what creditors would recover in a chapter 7 liquidation, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Debtors' assets if the Chapter 11 Cases were converted to chapter 7 and the assets were liquidated by a trustee in bankruptcy. Conversion of the Chapter 11 Cases to chapter 7 cases would necessarily entail additional Administrative Claims, as there would be an additional layer of administrative expenses flowing from the appointment of a chapter 7 trustee, which would have priority with respect to unencumbered assets. Further, the chapter 7 trustee would likely also employ professional persons (similar to the Debtors' Retained Professionals), to assist him or her in the administration of the Debtors' estates. However, the chapter 7 trustee would likely retain different professional persons than currently involved, resulting in a duplication of efforts, as the chapter 7 trustee's professionals learn, at the estate's expense, what the Debtors' Retained Professionals already know. Further, distributions would be significantly delayed, as the chapter 7 trustee and related professionals attempted to familiarize themselves with the case background and fully administer the case, as distributions in a chapter 7 would not occur until the end of the case.

After liquidation of assets in a chapter 7, secured creditors are paid first from the sales proceeds of properties and other assets upon which the secured creditor has a Lien. Administrative Claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to each creditors' respective rights to priority under the Bankruptcy Code. Unsecured creditors with the same priority share in proportion to the amount of its Allowed Claims. Finally, Interest Holders receive the balance that remains after all creditors are paid, if any.

In order for the Bankruptcy Court to be able to confirm the Plan, the Bankruptcy Court must find that all Holders of Claims and Interests who do not accept the Plan will receive at least as much under the Plan as such Holders would receive under a chapter 7 liquidation. The Debtors have evaluated the return to Holders of Claims and Interests under the Plan and has compared that anticipated return with what the Debtors believe will be realized if a forced liquidation occurs in a chapter 7.

The Debtors believe the price being paid by CED BTM under the CED MIPA represents fair market value for the membership interests in the Project Companies owned by Dev Borrower as going concerns.   Absent the DIP Facility, the Debtors have no cash with which to operate the Project Companies.  If the Project Companies cease operations, the value of the companies will immediately plummet because the Project Companies will be unable to fulfill their contractual

obligations and meet necessary milestones required for regulatory approvals. The Debtors estimate that after just 30 days of inactivity, the values of the Project Companies will decline by more than 30%. All of the Project Companies have payment obligations that come due on specific dates, failure to pay these obligations on time results in either the loss of land control, the loss of interconnection viability or the loss of permitting reviews. Any of these losses can be catastrophic to the viability of a project. Accordingly, in a chapter 7 liquidation, there would be insufficient proceeds from a sale of the membership interests in the Project Companies to repay even Dev Lender in full and the Senior Lenders would see no return whatsoever.

Based upon the foregoing, the Debtors respectfully submits that Holders of Claims and Interest will fare far better under the proposed Plan than under a chapter 7 liquidation.

### C.   Feasibility

When a debtor seeks to reorganize under chapter 11, the debtor must prove that its plan is feasible, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan. Here, because the Plan is a liquidating plan, a showing of feasibility is not required.

### D.   Alternatives to Confirmation and Consummation of the Plan

If the Plan cannot be confirmed, subject to the requirements of the Plan Support Agreement, the Debtors may seek to (a) prepare and present to the Bankruptcy Court an alternative chapter 11 plan for confirmation, (b) effect a merger or sale transaction, including, potentially, a sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code, or (c) liquidate their assets and businesses under chapter 7 of the Bankruptcy Code. If the Debtors were to pursue a liquidation of their assets and businesses in chapter 7, the Debtors would convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, and a trustee would be appointed to liquidate the assets of the Debtors for distribution in accordance with the priorities established by the Bankruptcy Code. A discussion of the effects that a chapter 7 liquidation would have on creditors' recoveries and the Debtors is set forth above.

### E.   Confirmation Without Acceptance by All Impaired Classes

The Bankruptcy Code permits confirmation of a plan even if it is not accepted by all impaired classes, as long as (a) the plan otherwise satisfies the requirements for confirmation, (b) at least one impaired class of claims has accepted the plan without taking into consideration the votes of any insiders in such class and (c) the plan is "fair and equitable" and does not "discriminate unfairly" as to any impaired class that has not accepted the plan. These so-called "cram down" provisions are set forth in section 1129(b) of the Bankruptcy Code.

### 1.   No Unfair Discrimination

The no "unfair discrimination" test applies to Classes of Claims or Interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that

30

the treatment be the same or equivalent, but that such treatment be "fair." The Debtors do not believe the Plan discriminates unfairly against any Impaired Class of Claims or Interests. The Debtors believe the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the foregoing requirements for nonconsensual confirmation.

### 2.     Fair and Equitable Test

This test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims or interests receive more than 100 percent of the amount of the allowed claims or interests in such class. As to a dissenting class, the test sets different standards depending on the type of claims or interests in such class. In order to demonstrate that a plan is fair and equitable with respect to a dissenting class, the plan proponent must demonstrate the following:

- **Secured Creditors**: Each holder of a secured claim (a) retains its liens on the property, to the extent of the allowed amount of its secured claim, and receives deferred cash payments having a value, as of the effective date of the chapter 11 plan, of at least the allowed amount of such claim, (b) has the right to credit bid the amount of its claim if its property is sold and retains its liens on the proceeds of the sale (or if sold, on the proceeds thereof), or (c) receives the "indubitable equivalent" of its allowed secured claim.

- **Unsecured Creditors**: Either (a) each holder of an impaired unsecured claim receives or retains under the chapter 11 plan property of a value equal to the amount of its allowed claim or (b) the holders of claims and interests that are junior to the claims of the nonaccepting class will not receive any property under the chapter 11 plan.

- **Holders of Interests**: Either (a) each holder of an impaired interest will receive or retain under the chapter 11 plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled, or the value of the interest or (b) the holders of interests that are junior to the non-accepting class will not receive or retain any property under the chapter 11 plan.

The Debtors believe that the Plan and treatment of all Classes of Claims and Interests therein satisfies the "fair and equitable" requirement, notwithstanding the fact that certain Classes are deemed to reject the Plan.

## VI.     EFFECT OF CONFIRMATION OF THE PLAN

### A.     Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith

compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

**B.      Releases by the Debtors**

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY IS DEEMED RELEASED AND DISCHARGED BY THE DEBTORS AND THEIR ESTATES FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT THE DEBTORS OR THEIR ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS,   ANY AVOIDANCE ACTIONS (BUT EXCLUDING AVOIDANCE ACTIONS BROUGHT AS COUNTERCLAIMS OR DEFENSES TO CLAIMS ASSERTED AGAINST THE DEBTORS), ANY INTERCOMPANY TRANSACTION, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE DIP FACILITY DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PREPETITION NEGOTIATION AND SETTLEMENT OF CLAIMS, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO FACILITATING THE LIQUIDATION AND IMPLEMENTING THE PLAN; (B) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (C) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (D) FAIR, EQUITABLE, AND REASONABLE; (E) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (F) A BAR TO ANY OF THE DEBTORS OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

### C.     Releases by Holders of Claims and Interests

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, EACH RELEASING PARTY IS DEEMED TO HAVE RELEASED AND DISCHARGED EACH DEBTOR AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP OR OPERATION THEREOF), THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS (BUT EXCLUDING AVOIDANCE ACTIONS BROUGHT AS COUNTERCLAIMS OR DEFENSES TO CLAIMS ASSERTED AGAINST THE DEBTORS), ANY INTERCOMPANY TRANSACTION, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE DIP FACILITY DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PREPETITION NEGOTIATION AND SETTLEMENT OF CLAIMS, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE

FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (A) ANY POSTEFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN INCLUDING WITHOUT LIMITATION THE CED MIPA.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASE PROVIDED FOR HEREIN, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING AND IMPLEMENTING THE PLAN; (D) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (E) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE RELEASE.

### D.    Exculpation

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE PLAN SUPPORT AGREEMENT AND RELATED PREPETITION
TRANSACTIONS, THE DIP FACILITY, THE DISCLOSURE STATEMENT, THE PLAN, OR ANY LIQUIDATION TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE DIP FACILITY, THE DISCLOSURE STATEMENT, THE PLAN, THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE DIP FACILITY DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PREPETITION NEGOTIATION AND SETTLEMENT OF CLAIMS, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, EXCEPT FOR CLAIMS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER BY A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD,

WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, BUT IN ALL RESPECTS SUCH ENTITIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.

THE EXCULPATED PARTIES HAVE, AND UPON CONFIRMATION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES ON, AND DISTRIBUTION OF CONSIDERATION PURSUANT TO, THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATION SET FORTH ABOVE DOES NOT RELEASE OR EXCULPATE ANY CLAIM RELATING TO ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY LIQUIDATION TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.

### E.    Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (A) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (B) HAVE BEEN RELEASED PURSUANT TO SECTION 9.2 OF THIS PLAN; (C) HAVE BEEN RELEASED PURSUANT TO SECTION 9.3 OF THIS PLAN, (D) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 9.4 OF THIS PLAN, OR (E) ARE OTHERWISE DISCHARGED, SATISFIED, STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A

DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS DISCHARGED, RELEASED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN.

### F.    Waiver and Release of Causes of Action

All Causes of Action are expressly waived, relinquished, exculpated, released, compromised, and settled in the Plan; provided, however, that CED's rights under the CED MIPA shall survive according to their terms notwithstanding anything to the contrary in this Plan.

### G.    Release of Avoidance Actions

On the Effective Date, the Debtors, on behalf of themselves and their estates, shall release any and all Avoidance Actions and the Debtors, and any Entity acting on behalf of the Debtors, shall be deemed to have waived the right to pursue any and all Avoidance Actions, except for Avoidance Actions brought as counterclaims or defenses to claims asserted against the Debtors.

## VII.    RISK FACTORS

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan. You are encouraged to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in its entirety, and in consultation with your own advisors. Based on the analysis of the risks summarized below, the Debtors believe that the Plan is viable and will meet all requirements of confirmation:

### A.    A Holder of a Claim or Interest May Object to, and the Bankruptcy Court May Disagree with, the Debtors' Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created seven (7) Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. However, a Holder of a Claim or Interest could challenge the Debtors' classification. In such an event, the cost of the Chapter 11 Cases and the time needed to confirm the Plan may increase, and there can be no assurance that the Bankruptcy Court will agree with the Debtors' classification. If the Bankruptcy Court concludes that the classifications of Claims and Interests under the Plan do not comply with the requirements of the Bankruptcy Code, the Debtors may need to modify the Plan (subject to the terms of the Plan Support Agreement). Such modification

could require re-solicitation of votes on the Plan. The Plan may not be confirmed if the Bankruptcy Court determines that the Debtors' classification of Claims and Interests is not appropriate.

**B.      The Debtors May Not Be Able to Satisfy the Voting Requirements for Confirmation of the Plan**

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors may seek, as promptly as practicable thereafter, Confirmation. If the Plan does not receive the required support from Class 3, the Debtors may elect to amend the Plan, seek to sell their assets pursuant to section 363 of the Bankruptcy Code, or proceed with liquidation. There can be no assurance that the terms of any such alternative chapter 11 plan or sale pursuant to section 363 of the Bankruptcy Code would be similar or as favorable to the Holders of Allowed Claims as the sale contemplated by the Plan.

**C.      The Bankruptcy Court May Not Confirm the Plan or May Require the Debtors to Re-Solicit Votes with Respect to the Plan**

The Debtors cannot assure you that the Plan will be confirmed by the Bankruptcy Court. Section 1129 of the Bankruptcy Code, which sets forth the requirements for confirmation of a plan of liquidation, requires, among other things, a finding by the Bankruptcy Court that all claims and interests have been classified in compliance with the provisions of section 1122 of the Bankruptcy Code, and that, under the plan of reorganization, each holder of a claim or interest within each impaired class either accepts the plan of reorganization or receives or retains cash or property of a value, as of the date the plan of reorganization becomes effective, that is not less than the value such Holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. With respect to impaired classes of claims or interests that do not accept the plan, section 1129(b) requires that the plan be fair and equitable (including, without limitation the "absolute priority rule") and not discriminate unfairly with respect to such classes. There can be no assurance that the Bankruptcy Court will conclude that the requirements of section 1129 of the Bankruptcy Code have been met with respect to the Plan. If and when the Plan is filed, there can be no assurance that modifications to the Plan would not be required for Confirmation, or that such modifications would not require a re-solicitation of votes on the Plan.

The Bankruptcy Court could fail to approve this Disclosure Statement and determine that the votes in favor of the Plan could be disregarded. The Debtors would then be required to recommence the solicitation process, which could include re-filing a plan of liquidation and disclosure statement.

If the Plan is not confirmed, the Chapter 11 Cases may be converted into cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code. A discussion of the effects that a chapter 7 liquidation would have on the recoveries of Holders of Claims and Interests is set forth above in Section V.B.  The Debtors believe that liquidation under chapter 7 of the Bankruptcy Code would result in, among other things, substantially smaller distributions being made to creditors and interest Holders than those provided for in the Plan**.**

**D.** **Even if the Debtors Receive All Necessary Acceptances for the Plan to Become Effective, the Debtors May Fail to Meet All Conditions Precedent to Effectiveness of the Plan**

Although the Debtors believe that the Effective Date would occur very shortly after the Confirmation Date, there can be no assurance as to such timing. The Confirmation and Consummation of the Plan are subject to certain conditions that may or may not be satisfied, including the Closing of the CED MIPA. The Debtors cannot assure you that all requirements for Confirmation and effectiveness required under the Plan will be satisfied. If each condition precedent to Confirmation is not met or waived, the Plan will not be confirmed, and if each condition precedent to consummation is not met or waived, the Effective Date will not occur. In the event that the Plan is not confirmed or is not consummated, the Debtors may seek Confirmation of an alternative plan.

**E.** **The Bankruptcy Court May Find the Solicitation of Acceptances Inadequate**

Usually, votes to accept or reject a plan of reorganization are solicited after the filing of a petition commencing a chapter 11 case. Nevertheless, a debtor may solicit votes prior to the commencement of a chapter 11 case in accordance with sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b). Sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b) require that:

- solicitation comply with applicable nonbankruptcy law;

- the plan of reorganization be transmitted to substantially all creditors and other interest holders entitled to vote; and

- the time prescribed for voting is not unreasonably short.

In addition, Bankruptcy Rule 3018(b) provides that a Holder of a Claim or Interest who has accepted or rejected a plan before the commencement of the case under the Bankruptcy Code will not be deemed to have accepted or rejected the plan if the court finds after notice and a hearing that the plan was not transmitted in accordance with reasonable solicitation procedures. Section 1126(b) of the Bankruptcy Code provides that a Holder of a Claim or Interest that has accepted or rejected a plan before the commencement of a case under the Bankruptcy Code is deemed to have accepted or rejected the plan if (i) the solicitation of such acceptance or rejection was in compliance with applicable nonbankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation or (ii) there is no such law, rule, or regulation, and such acceptance or rejection was solicited after disclosure to such Holder of adequate information (as defined by section 1125(a) of the Bankruptcy Code). While the Debtors believe that the requirements of sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b) will be met, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### F.     There is a Risk of Termination of the Plan Support Agreement

To the extent that events giving rise to termination of the Plan Support Agreement occur, the Plan Support Agreement may terminate prior to the Confirmation or Consummation of the Plan, which could result in the loss of support for the Plan, which could adversely affect the Debtors' ability to confirm and consummate the Plan. If the Plan is not consummated, there can be no assurance that the Chapter 11 Cases would not be converted to chapter 7 liquidation cases or that any new chapter 11 plan would be as favorable to Holders of Claims as the current Plan.

### G.     The Bankruptcy Court May Dismiss Some or All of the Chapter 11 Cases

Certain parties in interest may contest the Debtors' authority to commence and/or prosecute the Chapter 11 Cases. If, pursuant to any such proceeding, the Bankruptcy Court finds that some or all of the Debtors could not commence the Chapter 11 Cases for any reason, the Debtors may be unable to consummate the transactions contemplated by the Plan Support Agreement and the Plan. If some or all of the Chapter 11 Cases are dismissed, the Debtors may be forced to cease operations due to insufficient funding and/or liquidate their businesses in another forum to the detriment of all parties in interest.

### H.     The United States Trustee or Other Parties May Object to the Plan on Account of the Releases, Exculpations, or Injunction Provisions

Any party in interest, including the U.S. Trustee, could object to the Plan on the grounds that the (i) debtor release contained in Section 9.2 of the Plan is to be given without adequate consideration, (ii) the release contained in Section 9.3 of the Plan is not given consensually or in a permissible non-consensual manner, (iii) exculpation contained in Section 9.4 of the Plan cannot extend to non-estate fiduciaries, or (iv) the injunction contained in Section 9.5 of the Plan is overly broad. In response to such an objection, the Bankruptcy Court could determine that any of these provisions are not valid under the Bankruptcy Code. If the Bankruptcy Court makes such a determination, the Plan could not be confirmed without modifying the Plan to alter or remove the applicable provision. This could result in substantial delay in Confirmation of the Plan, the Plan not being confirmed at all, or the loss of support for the Plan from the non-Debtor parties to the Plan Support Agreement.

### I.     The Bankruptcy Court May Not Approve the DIP Facility

Upon commencing the Chapter 11 Cases, the Debtors will ask the Bankruptcy Court to authorize the Debtors to enter into postpetition financing arrangements, which requests will be in accordance with the terms of the Plan Support Agreement. Such access to postpetition financing will provide liquidity during the pendency of the Chapter 11 Cases. There can be no assurance that the Bankruptcy Court will approve the DIP Facility on the terms requested. Moreover, if the Chapter 11 Cases take longer than expected to conclude, the Debtors may exhaust their available postpetition financing. There is no assurance that the Debtors will be able to obtain an extension of the right to obtain further postpetition financing, in which case, the liquidity necessary for the orderly functioning of the Debtors' businesses may be impaired materially.

J.    **Tax Consequences**

SUBSTANTIAL UNCERTAINTY EXISTS WITH RESPECT TO TAX ISSUES REGARDING YOUR TREATMENT UNDER THIS PLAN. THEREFORE, EACH HOLDER OF A CLAIM IS URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES OF THE PLAN. NO RULINGS HAVE BEEN REQUESTED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN. THE TAX CONSEQUENCES OF THE PLAN COULD BE COMPLEX AND, IN MANY AREAS, UNCERTAIN. THEREFORE, EACH HOLDER OF A CLAIM IS STRONGLY URGED NOT TO RELY ON ANYTHING CONTAINED IN THIS PLAN AND TO CONSULT HIS OR HER OWN TAX ADVISOR REGARDING SUCH CONSEQUENCES.

## VIII.  CONCLUSION

It is important for you to exercise your right to vote on the Plan. A Ballot is being provided to you simultaneously herewith for voting purposes.

The Plan provides a distribution to Administrative Claims, the DIP Facility Claim, and secured creditors in excess of what could possibly be expected in the event of a chapter 7 liquidation. **AS SUCH, THE DEBTORS SUBMITS THAT THE PLAN IS FAIR AND EQUITABLE AND IN THE BEST INTEREST OF ALL HOLDERS OF CLAIMS AND INTERESTS AND URGES ALL SUCH HOLDERS THAT ARE ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN**.

Dated: July 2, 2020.

CEC DEVELOPMENT BORROWER, LLC

By: _____
Name: Thomas Sweeney
    Its: President


CEC RENEWABLE ASSETS, LLC

By: _____
Name: Thomas Sweeney
    Its: President


CEC RENEWABLE ASSETS DEVELOPMENT, LLC

By: _____
Name: Thomas Sweeney
    Its:  President

40

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/ David V. Wadsworth*

_____
David V. Wadsworth, #32066
Aaron J. Conrardy, #40030
Lindsay S. Riley, #54771
2580 West Main Street, Suite 200
Littleton, CO 80120
(303) 296-1999, Fax: (303) 296-7600
ATTORNEYS FOR DEBTORS

## EXHIBITS

Exhibit A – Plan of Liquidation

Exhibit B – Plan Support Agreement